In re Daniel Lewis JOHNSON, a/k/a
Daniel Lewis Sarver, Debtor.

Bankruptcy No. 93–60343.

United States Bankruptcy Court,
W.D. Missouri.

Aug. 25, 1999.

John C. Reed, Pletz & Reed, Jefferson City, MO, for Creditor.

Danny R. Nelson, Lathrop & Gage, Springfield, MO, for Debtor.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Creditor Debbie Rieke, formerly known as Debbie Sharp (Rieke), filed a motion to reopen this Chapter 11 bankruptcy case, and a motion to compel the disbursing agent to pay her unsecured claim, or alternatively to allow her to file a proof of claim out of time. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### ISSUES PRESENTED

(1) Rieke is listed on Johnson's bankruptcy schedules as an unsecured creditor whose claim is fixed and liquidated. The Disclosure Statement also lists Rieke as a creditor. The Plan of Reorganization (the Plan) states that all filed and allowed unsecured claims will be paid in full with interest. The Plan also provides that all claims not filed and allowed will be discharged. The Bankruptcy Code (the Code) provides that a proof of claim is deemed filed if the debt is listed on the schedules and is not disputed, contingent, or unliquidated. A filed claim is allowed if no one objects to it. The Federal Rules of Bankruptcy Procedure (the Rules) provide that a creditor listed on the schedules does not have to file a proof of claim if the claim is not disputed. Is Rieke's claim deemed filed and allowed and, therefore, provided for in the Plan?

(2) Rieke loaned debtor Daniel Lewis Johnson (Johnson) $22,700.00 over a period of several months pre-petition. There is no written documentation of these trans-

actions. The last loan was made on or before April 8, 1993. Johnson filed a Chapter 11 bankruptcy petition on April 9, 1993. The case was closed and a discharge was entered on June 10, 1996, but disbursements were made pursuant to the Plan of Reorganization (the Plan) through June of 1999. Missouri law provides that one must commence collection efforts on an oral contract or obligation within five years of the transaction. The automatic stay tolls the statute of limitations as to debt collection. Is Rieke barred by the statute of limitations from collecting this debt?

## DECISION

(1) Johnson acknowledged the validity and amount of Rieke's claim when he listed it on his bankruptcy schedules as fixed and liquidated. The listing of a fixed and liquidated debt on the schedules is the same as if the creditor filed a proof of claim. The Plan provides for the payment of all filed and allowed claims. Rieke's claim has not been paid, therefore, Rieke's motion to compel the disbursing agent to pay the full amount of claim with interest will be granted.

(2) The Missouri statute of limitations on an action to collect on an oral contract was tolled during the pendency of this Chapter 11 case. Rieke's right to collect under the Plan is, therefore, not barred by section 516.120 of Missouri's Revised Statutes.

## FACTUAL BACKGROUND

This is a rather unusual Chapter 11 bankruptcy case. Some background is informative before discussing the issues presented here. Daniel Johnson is a lottery winner, and is entitled to receive gross annual payments of $183,000 from the Illinois State Lottery through May of 2000. He is also incarcerated for the second degree murder of one Olen O'Neal in Jan-

uary of 1992. While in prison he became friendly with Debbie Rieke, and between December 11, 1992, and April 7, 1993, Rieke loaned Johnson $22,700. Rieke stated that she and Johnson executed no loan documents as to these transactions. She testified that she and Johnson developed a close personal relationship after she began corresponding with him in prison. She said that she held his power of attorney, and that she was appointed as a trustee of Johnson's estate. She also stated that she and Johnson had a joint checking account for a while and that the portion of Johnson's annual lottery payment allocated to his living expenses was deposited into that account on July 23, 1993. Johnson filed this Chapter 11 bankruptcy petition on April 9, 1993, and Rieke was aware of the bankruptcy filing. His bankruptcy schedules duly noted the loan to Rieke and listed her as an unsecured creditor with a fixed and liquidated debt. On July 12, 1993, Johnson filed his Disclosure Statement and Plan. On August 23, 1993, the Plan was confirmed by Order of this Court. The Plan provides for the appointment of a disbursing agent to disburse the annual lottery winnings until such time as all administrative, priority, secured, and unsecured claims are paid. The Plan states that claims which are filed and allowed shall be paid in full.[1]

On May 25, 1994, Judge Karen M. See of this Court entered an Order setting July 25, 1994, as the bar date for the filing of claims in this case.[2] It is undisputed that Rieke did not herself file a claim. On May 30, 1996, counsel for debtor filed the Final Report and Application for Final Decree, and on June 10, 1996, this Court entered its Final Decree and closed the case. The Court did, however retain jurisdiction to determine any and all claims made against the estate. After receiving the annual lottery payment in May of 1999, the disbursing agent prepared to make the final disbursement pursuant to the terms

---

1. Doc. # 73, pg. 2.

2. Doc. # 137. Judge See resigned her position on January 31, 1999.

of the Plan and in accordance with the claims filed in the case. Rieke testified that she contacted the disbursing agent at that time and was informed for the first time that she was not scheduled to receive any disbursements. She filed a motion to reopen the Chapter 11 case and to either compel the disbursing agent to pay her claim, or, alternatively, to allow her to file a proof of claim out of time. Johnson's attorney objected to both motions on the grounds that her claim was now barred by both the Bankruptcy Code (the Code) and Missouri's statute of limitations. On July 14, 1999, a hearing was held. At the hearing this Court took judicial notice of the bankruptcy schedules, the Disclosure Statement, the Plan, the Order setting the Bar Date, and a letter written by Rieke and received by the Court on November 23, 1994.

## DISCUSSION

 The Code provides that a creditor does not need to file a proof of claim if the debtor has scheduled its debt as fixed and liquidated:

> (A) A proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated.[3]

Moreover, a filed claim is deemed allowed unless a party in interest objects to either the validity or the amount of the claim:

> (A) A claim or interest, proof of which is filed under section 501 of this title is deemed allowed, unless a party in interest ... objects.[4]

3. 11 U.S.C. § 1111(a).

4. *Id.* at 502(a).

5. Fed. R. Bankr.P. 3003(b)(1).

6. *Id.* at 3003(c)(2).

The Rules are consistent with these provisions of the Code. According to Rule 3003(b) the schedule of liabilities filed by either the debtor or trustee is prima facie evidence of the validity and amount of a claim unless the claim is disputed, contingent, or unliquidated:

> (1) Schedule of Liabilities. The schedule of liabilities filed pursuant to § 521(1) of the Code shall constitute prima facie evidence of the validity and amount of the claims of creditors, unless they are scheduled as disputed, contingent, or unliquidated. It shall not be necessary for a creditor or equity security holder to file a proof of claim or interest except as provided by subdivision (c)(2) of this rule.[5]

Rule 3003(c)(2) relates to claims that are listed as disputed, contingent or unliquidated and requires the creditor to file a proof of claim in order to vote for the plan or receive a distribution from the estate:

> (C)(2) Who must file. Any creditor or security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for purposes of voting and distribution.[6]

Taken together these provisions of the Code and the Rules provide that only certain creditors are required to file proofs of claim in order to participate in a Chapter 11 reorganization.[7] Those creditors fall into two categories. Either the debtor disputes the claim of the creditor and schedules the debt as disputed, contingent, or unliquidated, in which case the creditor must file a proof of claim to vote on the Plan or receive a distribution.[8] Or the

7. *In re Mitchell,* 82 B.R. 583, 585 (Bankr. W.D.Okla.1988).

8. *In re Dartmoor Homes, Inc.,* 175 B.R. 659, 664 ((Bankr.N.D.Ill.1994); Fed. R. Bankr.P. 3003(c)(2).

creditor disagrees with the scheduled amount of its debt, and files a proof of claim to supersede the scheduled claim.[9] If, however, the creditor agrees with the scheduled amount of its debt, it need do nothing further.[10] I note that an employee of the law firm that represented Johnson at the time of filing testified that Rieke's debt was listed as fixed and liquidated on the schedules because that was the default setting used by the firm when preparing bankruptcy schedules. The schedules were amended, however, on June 24, 1993, and the debt in question was still scheduled as fixed and liquidated.[11] Thus, Johnson did not dispute the amount or validity of Rieke's claim prior to the confirmation of his Plan on August 23, 1993.[12]

■ Johnson's Plan provided that "claims which are filed and allowed shall be paid one hundred percent (100%) in full, with interest from the date of the bankruptcy petition at the rate of nine (9%) per annum until paid."[13] Rieke was aware of this provision in the Plan, and she voted in favor of the Plan prior to confirmation. The ballot Rieke returned indicates that she accepted her treatment under the Plan and stated the amount of her claim was $22,700.[14] The Plan also provides that the lottery proceeds will be used to pay unse-

cured claims after the payment of administrative expenses, Johnson's living expenses, the secured claims, the priority claims, and Johnson's post-petition attorney's fees.[15] I point this out to emphasize the lack of predictability as to when the unsecured creditors would actually receive payment. The amount of the post-petition attorney's fees could not be accurately estimated at the time the Plan was confirmed. As noted at the beginning of this Opinion, this is an unusual Chapter 11 case. It was apparently filed because Johnson needed to free up his lottery winnings for 1993 from the claims of creditors in order to pay attorneys to represent him in both the criminal case and wrongful death case that resulted from the death of Olen O'Neal. The Disclosure Statement lists Debbie Rieke as an anticipated unsecured claimant and provides that the lottery proceeds are sufficient to pay all creditors during the term of the Plan.[16] But the Disclosure Statement also states that unsecured creditors will only be paid as money is available.[17] The Confirmation Order states:

> Because of the many legal proceedings which are pending which have resulted in uncertain administrative costs, an exact projection of the amount each credi-

9. *Krueger v. Push & Pull Enterprises, Inc. (In re Push & Pull Enterprises, Inc.)*, 84 B.R. 546, 551 (Bankr.N.D.Ind.1988) (holding that once a proof of claim is filed it supersedes the scheduled claim and shifts the burden to the debtor to object because unless the claim challenged, it is deemed allowed); 11 U.S.C. § 502(a); Fed. R. Bankr.P. 3003(c)(4).

10. *In re Dartmoor Homes, Inc.*, 175 B.R. at 664 (stating that when a claim is scheduled as fixed and liquidated, the creditor can accept the amount as scheduled or file a claim for a different amount). *See also Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 67 B.R. 899, 902 (Bankr.E.D.Tenn. 1986) (stating that the bank did not need to file a proof of claim in that its claim was not scheduled as disputed, contingent, or unliquidated, therefore, it was deemed allowed without the filing of a proof of claim).

11. Doc. # 64.

12. Rieke did testify that Johnson filed suit against her in Webster County Circuit Court on August 26, 1994. Debtor's Ex. L. The lawsuit alleges that Rieke converted property of Johnson's that he entrusted to her care. The lawsuit was dismissed with prejudice, however, on January 1, 1996. This lawsuit is not relevant to whether Rieke's claim against Johnson is a valid claim in his bankruptcy case. In fact, it is not disputed by either party that Rieke did loan Johnson the sum of $20,700 prior to the bankruptcy filing.

13. Doc. # 73, pg. 2, Class IV.

14. Doc. # 91. (Report on Acceptance of Plan)

15. Doc. # 73, pg. 2, Class IV.

16. Doc. # 74, pg. 4.

17. *Id.* at pg. 5, ¶ 4.

tor shall receive each year from the Illinois State Lottery proceeds is difficult, but Debtor's estimate is attached hereto as Exhibit 'A' and incorporated in this Order.[18]

Johnson's attorney argues that Rieke either waived her right to payment in this case, or that the doctrine of laches prevents her from now demanding payment, since the case has been closed since June 10, 1996. I disagree. Rieke testified that she believed she would receive her payment, as provided in the Plan, until she spoke with the disbursing agent just prior to filing the motions at issue here. When told she would not receive payment, she immediately moved this Court for relief. Given the inability of the Court to determine exactly when unsecured creditors would be paid, I find she was justified in that belief. In *Springbrook Apartments of Anderson, Ltd.*,[19] the Court held that if a plan provides for payment of the allowed amount of all allowed claims, the claims allowed must be paid, whether filed or scheduled and not disputed.[20] Rieke's claim for $22,700 was not disputed, it was scheduled, the Plan was confirmed, and the claim must be paid.

Johnson claims that the Order Setting Bar Date entered by the Court on May 25, 1994, required Rieke to file a proof of claim, even though her claim was deemed filed under section 1111(a) of the Code. The Order Setting Bar Date reads as follows:

> ORDERED that all claims must be filed on or before the 25th day of July, 1994. Any claim not filed on or before the bar date will be disallowed and potentially discharged in Debtor's bankruptcy.[21]

Rieke, however, did not need to file a claim, because, pursuant to section 1111(a), her claim was deemed filed. Nothing in the Order Setting Bar Date or the Order of Confirmation stated that either Order was intended to override the provisions of the Code and Rules upon which Rieke was justified in relying.

The Court retained jurisdiction in this case to determine the allowance of all claims.[22] The Plan further provided that the disbursing agent would make all payments required by the Plan and account to the Court for payments made.[23] I will, therefore, grant Rieke's motion to compel the disbursing agent to pay the claim in the amount of $22,700 plus interest at the rate of 9 percent per annum from the date of the bankruptcy filing on April 9, 1993.

As to the argument that the statute of limitations on an action to collect a liability on an oral contract bars Rieke's claim, I find there is no merit to that argument. The claim was deemed filed and allowed when Johnson scheduled it. The Plan provided for its payment. The disbursing agent has not advised the Court that all creditors have been paid in full pursuant to the terms of the Plan. The automatic stay prevented Rieke from taking any other action to collect the debt until the final disbursements were made. And Rieke had no reason to take any other action to collect the debt since payment of the debt was provided for in the Plan. As to the motion to reopen the case and to allow Rieke to file a proof of claim out of time, such motions are moot. The case is not closed as to Rieke's treatment under the confirmed Plan. The debt was scheduled as fixed and liquidated, therefore, Rieke need not file a proof of claim.

An Order in accordance with this Memorandum Opinion will be entered this date.

---

18. Doc. # 96.

19. 135 B.R. 526 (Bankr.S.D.Ohio 1992).

20. *Id.* at 527.

21. Doc. # 137.

22. Doc. # 73, pg 3, ¶ IV(e).

23. *Id.* at ¶ IV(g).