In re Bryan P. **EARLEY** and Sherrie L. Earley, Debtors.

**Bankruptcy No. 86–80311.**

United States Bankruptcy Court, C.D. Illinois.

June 10, 1987.

See also, Bkrtcy., 65 B.R. 658.

---

Barry M. Barash, Barash, Stoerzbach & Henson, Galesburg, Ill., for debtors.

L. Lee Smith, Asst. U.S. Atty., Peoria, Ill., for The Farmers Home Admin.

## DECISION AND ORDER

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

Before the Court is the objection filed by the debtors, Bryan P. and Sherrie L. Earley, to the claim of the Farmers Home Administration (FmHA).

The debtors filed a Chapter 11 bankruptcy petition on February 4, 1986. The bankruptcy schedules list the market value of their 135–acre farm to be $87,950.00. The FEDERAL LAND BANK (LAND BANK) is listed as having a first mortgage in the amount of $80,891.00. The FmHA is listed as having a second mortgage in the amount of $89,340.00. The debtors' plan, filed April 4, 1986, lists the LAND BANK as a secured creditor and the amount of its claim as $80,981.00. The FmHA, listed as a "secured junior class claim," is listed as having an allowed secured claim in the amount of $6,969.00. The LAND BANK filed a proof of secured claim for $89,-333.86 on April 17, 1986. The FmHA filed a proof of claim on May 2, 1986, for $88,-295.95.

On May 8, 1986, the LAND BANK filed a motion to lift the automatic stay. In its motion, it alleged that the amount due as of the date of filing was $89,333.86. On September 8, 1986, an agreed "adequate protection order and stipulation to accept amended plan" was filed. That order provided that the plan provide that the amount of the secured claim of the LAND BANK was $89,813.86 and that the LAND BANK be paid in full. The plan was not amended.

After notice and a hearing, the plan was confirmed on October 17, 1986. That order provided:

"1. The plan of reorganization filed by the debtors on April 4, 1986, is confirmed, except as hereinafter amended:

a. The treatment of the Class S1 claim of The Federal Land Bank of St. Louis shall be governed by the Adequate Protection Order and Stipulation to Accept Plan entered by this court on September 9, 1986.

\*     \*     \*     \*     \*     \*

5. The provisions of the confirmed plan bind the debtors, and any creditor or other party in interest, whether or not the claim or interest of such creditor or party is impaired under the plan and whether or not such creditor or party in interest has accepted the plan."

On March 2, 1987, the debtors filed an objection to the FmHA's claim, alleging that the fair market value of the farm is less than the amount of the first mortgage due the LAND BANK, and accordingly, that the FmHA's claim is entirely unse-

cured and should be treated as an unsecured claim. The debtors seek an order requiring the FmHA to release its second mortgage. The FmHA moved to dismiss the debtors' objection to its claim, asserting that the debtors are attempting to modify the plan without first complying with the requirements of Section 1127(b). The FmHA also contends that, in view of the relief sought, the matter should have been brought as an adversary proceeding.

Bankruptcy Rule 3007, which governs the procedure on objections to claims does not fix a time period within which objections must be filed. Discussing the absence of a bar date, *Collier*'s states:

"A cut off date would be inappropriate for in many cases it may not be known until late in the administration of the case whether there will be any dividend so that [no] useful purpose would be served by the making of the objection by the trustee." 3 *Collier on Bankruptcy*, para. 5.02.01[3].

While it is true that it would make little sense to fix a date for the filing of objections to claims in a Chapter 7 case, this Court does not perceive the absence of a specific bar date in either the Code or the Bankruptcy Rules to sanction or warrant an open-end season for the filing of objections. Each case must be reviewed on its own facts in determining whether an objection to a claim has been timely made.

Here, the debtors' plan, which provided that the FmHA was secured to the extent of $6,969.00, has been confirmed by this Court. It is well-established that an order of confirmation is *res judicata* to all issues which could have been raised pertaining to the plan.[1] 5 *Collier on Bankruptcy*, Para. 1141.01[1]; *In re Air Center, Inc.*, 48 B.R. 693 (Bkrtcy.W.D.Okla.1985). The debtors knew, prior to confirmation, that, as a result of their agreement with the LAND BANK, the claim of the FmHA was totally unsecured—contrary to the provisions of their plan. The debtors certainly

had the opportunity to object to the FmHA's claim or to amend their plan prior to confirmation. Under the specific facts of this case, this Court finds that the debtors' objection is not timely.

The debtors contend that, even if their objection is construed as an attempt to modify the plan, that they be permitted to do so because the plan has not been substantially consummated. A confirmed plan which has been substantially consummated cannot be modified. 11 U.S.C. Section 1127(b); *In re AT of Maine, Inc.*, 56 B.R. 55 (Bkrtcy.D.Me.1985); *In re Northampton Corp.*, 37 B.R. 110 (Bkrtcy.E.D.Pa. 1984). Substantial consummation is defined in Section 1101(2) to mean:

"(A) transfer of all or substantially all of the property proposed by the plan to be transferred;

(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C) commencement of distribution under the plan."

Section 1101(2) is derived from Section 229 of former Chapter X of the Bankruptcy Act, 11 U.S.C. Section 629, which defined substantial consummation in similar terms. Discussing the purposes of Section 229, the court in *In re Seminole Park and Fairgrounds, Inc.*, 502 F.2d 1011, 1014 (5th Cir.1974), said:

"[Section 229] serves several important functions. In many ways it is the key to the whole of Chapter X which, as its name reflects, envisages that out of the proceedings will come a new reorganized company capable of sailing forth in the cold, cruel business world with no longer the protective wraps of the federal Bankruptcy Court. Section 229 furnishes the objective criteria for determining when that stage has arrived. As a corollary of this it means also that the Bankruptcy

---

1. Section 1141(a) of the Bankruptcy Code provides:

"(a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor ... and any

creditor, ... whether or not the claim or interest of such creditor, ... is impaired under the plan and whether or not such creditor ... has accepted the plan."

Court has no day-to-day supervision of the business operation of the new enterprise. And one of the principal reasons for its enactment was to inhibit Bankruptcy Courts, either because of economic changes or other circumstances, from succumbing to the temptation too infrequently raised to second guess the approved plan or reorganization by establishing what was in fact a new plan in the guise of a simple order or an amendment. The possibility that the Bankruptcy Court would, or could legally, do this would be a depressant to the acceptance of the new entity by new creditors, customers, bankers and others dealing with it."

 The debtors' plan provides for payments to begin on March 1, 1987. As previously noted, the plan was confirmed on October 17, 1986. This Court will presume, in the absence of evidence to the contrary, that payments to creditors were made on that date.[2] The plan did not call for the transfer of any property and the debtors have continued to operate the farm. For those reasons, this Court finds that the debtors' plan was substantially consummated and that the debtors are therefore precluded from modifying it.

As the court in *Seminole Park, supra,* recognized, there is a need for finality in reorganization proceedings. If this Court would permit the debtor to amend the plan by relegating the secured claim of the FmHA to unsecured status, what would prevent this Court from entertaining any issue which the FmHA might raise? Once the door is opened, the interests of justice would require that all parties be given an opportunity to be heard. That practice is prohibited by the Code and cannot be countenanced by this Court.

Accordingly, IT IS ORDERED that the objection filed by the debtors, Bryan P. and

Sherrie L. Earley, to the claim of the Farmers Home Administration is DENIED.

---

**2.** This assumption is supported by the fact that the debtors' objection was filed on March 2, 1987, one day after the payments were to be made under the plan. As long as payments were made to other creditors on March 1, 1987, it is irrelevant whether a payment was made to the FmHA. Stated another way, failure to make payment to a particular creditor does not prevent the plan from being substantially consummated.