**In re FANSAL SHOE CORP. d/b/a Marlowe Shoes, Debtor.**

**Bankruptcy No. 87–B–20304.**

United States Bankruptcy Court, S.D. New York.

Sept. 24, 1990.

Fischoff & Gelberg, Garden City, N.Y., for debtor.

Greenstone, Sokol, Behot and Fiorenzo, Hackensack, N.J., Goldman, Greenbaum & Milner, P.C., New York City, for creditor.

### DECISION ON MOTION TO MODIFY PLAN OF REORGANIZATION

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Fansal Shoe Corp. d/b/a Marlowe Shoes ("Fansal"), the former debtor in this con-

firmed Chapter 11 case, has moved pursuant to 11 U.S.C. § 1127(b) to modify its confirmed plan of reorganization to add four additional unsecured creditors to its schedule of unsecured debts and to include those debts in its confirmed plan of reorganization because the debts were allegedly inadvertently omitted from its schedules.

## FINDINGS OF FACT

1. Fansal filed with this court its petition for reorganizational relief under Chapter 11 of the Bankruptcy Court on June 23, 1987. It continued to manage its business as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

2. Fansal is a corporation organized under the laws of the State of New Jersey, originally engaged in the retail sale of shoes in New York and New Jersey.

3. On January 27, 1989, this court entered an order confirming Fansal's amended Chapter 11 plan of reorganization. Pursuant to the plan, the holders of administration priority claims were paid in cash equal to the allowed amounts of such claims within five days of the effective date of the plan. All tax claims having priority in accordance with 11 U.S.C. § 507(a)(3) were to be paid over a period not to exceed three years from the effective date of the plan. Fansal's counsel has stated that all administration and priority tax claims have been fully paid pursuant to the plan.

4. The unsecured claims are to be paid in cash at the rate of 9% as follows: 1.25% to be paid not later than 2 years after the effective date of the plan; 3.75% not later than 3 years after the effective date of the plan; 5% not later than 5 years after the effective date of the plan.

5. There was no evidence that any distribution has yet been made to any of the allowed unsecured claim holders.

6. Two of the four omitted creditors are law firms. They are the firms of Goldman, Greenbaum & Milner, P.C. in New York and Greenstone, Sokol, Behot and Fiorenzo in New Jersey. There firms were retained by Ira Marlowe when he was president of the debtor corporation in 1986. The two law firms were retained to defend an action commenced by Ira Marlowe's ex-wife in connection with a matrimonial dispute which also sought dissolution of the corporate debtor.

7. After the matrimonial action was commenced by Ira Marlowe's ex-wife, he turned over control of the debtor corporation to his sister, Ronnie Marlowe, who was the president of the corporation when it filed its Chapter 11 petition on June 23, 1987.

8. Ira Marlowe testified that the two law firms were aware of the Chapter 11 petition filed by Fansal. This point is conceded by Martin Goldman, an officer of Goldman, Greenbaum & Milner, P.C. in his affidavit sworn to September 7, 1990, in which he states in part as follows:

2. At and prior to the time of the filing of the bankruptcy petition in the above-entitled matter, the Debtor, by its principal officer, Ronnie Marlowe, states that because of the superior knowledge of the facts possessed by this firm, the Debtor was requesting that this firm continue representing it and to coordinate with the law firm of Greenstone, Sokol, Behot and Fiorenzo those matters which it had been engaged to work on prior to the bankruptcy. Ms. Marlowe indicated that the debt of Goldman, Greenbaum & Milner, P.C. would be and had been consciously left off the list of creditors so that the debt in question would not be discharged in bankruptcy. Ms. Marlowe instructed Goldman, Greenbaum & Milner, P.C. not to even file a proof of claim in bankruptcy since she stated that Goldman, Greenbaum & Milner, P.C. would be paid notwithstanding the bankruptcy.

9. On August 25, 1989, the law firm of Greenstone, Sokol, Behot and Fiorenzo commenced an action against Fansal in the Superior Court of New Jersey for prepetition legal fees. On February 16, 1990, this law firm obtained a judgment against Fansal in the amount of $8,944.75, plus costs and interest. Thereafter, the law firm obtained a writ of execution from the Superior Court of New Jersey dated March 5,

1990, directing the Sheriff of Bergen County to execute against the property of Fansal to satisfy the judgment.

10. Fansal's current president, Ronnie Marlowe, testified that she was unaware that her brother retained the New Jersey law firm when he was president of the debtor. She testified that she first became aware of the claims when she received a certified letter from the New Jersey law firm on March 7, 1989. However, the New Jersey law firm had previously mailed two bills for their services to Marlowe Shoes at its Fort Lee, New Jersey address, dated December 23, 1988 and January 25, 1989, addressed to the attention of Ronnie Marlowe, the current president of Fansal. Both letters predated this court's confirmation order, dated January 27, 1989.

## DISCUSSION

■ A plan proponent's right to modify a confirmed Chapter 11 plan is governed by 11 U.S.C. § 1127(b) which provides as follows:

(b) The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title.

Manifestly, a confirmed plan may not be modified after substantial confirmation, which is defined in 11 U.S.C. § 1101 as follows:

(2) "substantial consummation" means—

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;

(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all

or substantially all of the property dealt with by the plan; and

(C) commencement of distribution under the plan.

Substantial consummation does not occur until all three elements delineated in subsections (A), (B) and (C) have been satisfied because the statute is written in the conjunctive. *U.S. v. Novak*, 86 B.R. 625, 628 (D.S.D.1988); *Federal Land Bank of Louisville v. Gene Dunavant and Son Dairy (In re Gene Dunavant and Son Dairy)*, 75 B.R. 328, 332 (M.D.Tenn.1987); *In re Bedford Springs Hotel, Inc.*, 99 B.R. 302, 303 (Bank.W.D.Pa.1989); *In re Charterhouse*, 84 B.R. 147, 152 (Bankr.D.Minn. 1988). In order to support a proposed modification, the proponent has the burden of establishing that the plan has not been substantially consummated. *In re U.S. Repeating Arms Co.*, 98 B.R. 138, 140 (Bankr. D.Conn.1989).

In the instant case, the confirmed Chapter 11 plan did not provide for the transfer of any property as authorized under subsection (A) of 11 U.S.C. § 1101(2) and the debtor continued to operate the business and assumed the management of all the property dealt with by the plan, as described in subsection (B). Therefore, the only element in question for purposes of determining whether or not the plan was substantially consummated within the meaning of 11 U.S.C. § 1101(2) relates to subsection (C) which requires "commencement of distribution under the plan." *In re Earley*, 74 B.R. 560, 563 (Bankr.C.D.Ill. 1987).

■ It is now well-settled that substantial consummation may occur even though the debtor has not distributed to the creditors substantially all of the amounts called for by the plan because substantial consummation requires only that there was a "commencement of distribution under the plan." *U.S. v. Novak*, 86 B.R. at 630; *In re Hayball Trucking, Inc.*, 67 B.R. 681, 683 (Bankr.E.D.Mich.1986). The reference to a transfer of all or substantially all of the property proposed by the plan to be transferred as stated in subsection (A) of 11 U.S.C. § 1101(2) has significance only

when the plan calls for the transfer of property by the debtor in addition to the distribution of dividends to creditors. If the plan does not call for any property transfers and the debtor continues to manage the property dealt with under the plan there is no additional percentage of payments test to be applied in determining if a substantial consummation of a confirmed plan has occurred; the only requirement is the commencement of distribution within the plan. *U.S. v. Novak*, 86 B.R. at 630; *In re Hayball Trucking, Inc.*, 67 B.R. at 683.

In the instant case the debtor has commenced distribution under the plan and has fully paid the class of administration claims as well as the priority tax claimants. Hence, the debtor has substantially consummated its Chapter 11 plan and is precluded by 11 U.S.C. § 1127(b) from modifying the terms of the confirmed plan.

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A).

2. The confirmed debtor has failed to establish that its confirmed Chapter 11 plan of reorganization has not been substantially consummated within the meaning of 11 U.S.C. § 1101(2).

3. The confirmed debtor's motion to modify a substantially consummated Chapter 11 plan of reorganization by adding four additional creditors is denied because 11 U.S.C. § 1127(b) bars the modification of a substantially consummated Chapter 11 plan of reorganization.

IT IS SO ORDERED.